Good morning. If the court please, my name is Julian Balingi and I represent the appellants in this case, which I will refer to collectively as Park Place Funding. I want to point out to the court that what this case is not about is subprime mortgage loans. It's not about fraud and it's not about unlawful conduct. In fact, the borrowers that the appellants presented to National City Bank had excellent credit and all of their loans were paid off. The real issue before the court is whether or not there was sufficient evidence in the district court to create a triable issue of fact as to any and all of the appellants' claims. I want to point out to the court that what this case is not about is subprime mortgage loans. It's not about fraud and it's not about unlawful conduct. They took from the buyer a high interest note. They made a promise to the homeowner that they'd refinance after a certain interval, 90 days or something, at a lower rate of interest. They did what they promised. They didn't cheat the homeowner. Freddie Mac has regulations that they don't take this kind of paper because it's not what they call investment grade. That doesn't mean that the loans won't be paid. What it means is when they sell the paper, the buyer gets less interest than he expected to get because of the prepayments when the loans are refinanced. So Freddie Mac put Family on the list of brokers whose paper it wouldn't buy. National City then quit buying Family's paper because they couldn't resell it to Freddie Mac and Family's business failed. It looks to me as though every one of Family's claims, I guess California codifies everything, but every one of them is in the nature of a common law claim for interference with advantageous contractual relations, defamation, all that sort of thing. And it looks like all of them are subject to a conditional privilege where there's a legitimate business interest by the person who engages in the conduct, which Freddie Mac has here. What am I missing? Well, I believe what the court is missing is, and I think the court is addressing Freddie Mac's argument that Freddie Mac has the right to do business with whomever it wants to. That is not what this case is about. First of all, Park Place Funding... Why doesn't Freddie Mac have a privilege to tell National City, assuming it did, I know there are disputes of fact, but why wouldn't it have a privilege to tell National City, we don't want to buy any paper if you do business with Family because Family Home does these refinancings and the pooled investment certificates we sell aren't worth as much when the high interest rates... If that's as far as it had gone, it could absolutely have done that. But what it did was, it not only told National City, we don't want you to buy any, we don't want you to transact these loans, what it did is, because it put them on the exclusionary list, it precluded every other lender who was a Freddie Mac seller servicer from doing business with Park Place Funding and essentially put them out of business. Well, as I understand it, it didn't actually preclude them from doing business with Family Home. The effect was that while most of these lenders aren't really lenders, all they are is paper processors, they resell the loans. That's correct. They could lend their own money if they wanted to to Family Home, it's just they don't like to lend their own money. They only like to lend money when they can resell the note to some government agency. No, but what the Freddie Mac witnesses testified to, in particular Joan Forenzi, was that when Park Place was placed on this list, any seller servicer in the United States could not do business with Park Place Funding. All Freddie Mac had to do was say, we want you National City... Couldn't any local bank do business with them as long as it didn't try to resell the paper? Not according to the evidence in the record, Your Honor. Once they're on the exclusionary list, any bank that has a relationship with Freddie Mac cannot do business with them. So the Freddie Mac bank isn't just precluded from selling Family Home's promissory notes. Where in the record do we find proof of that statement? All this collateral damage. If you look at the excerpts of the record at pages 150 and 164, Joan Forenzi, who was the lead investigator of Freddie Mac, which led to the placement of Park Place Funding on the exclusionary list, testified that those on the list... And bear with me, I may have given you the wrong site. Excerpts of the record 179. Joan Forenzi testified that placement on the exclusionary list precludes any Freddie Mac seller servicer from doing business with the appellants, which essentially put them out of business. Michael Wade, who was also the president of Freddie Mac at the time, who made the decision to place them on the exclusionary list, testified that when he was in the banking industry, that any bank who dealt with Freddie Mac would not deal with any mortgage broker on the exclusionary list. And that is at excerpts of the record 1905. Now, that's not quite the same thing. So as a practical matter, they don't do business with family. They cannot. Anyone on the exclusionary list... Cannot and do not are two different propositions. Do not and cannot. Well, the do not I got from what you just read, but I'm not sure I got the cannot. You're telling us then that if you're on Freddie Mac's exclusionary list, then you cannot deal, Park Place cannot sell its paper to any bank that wishes to have a relationship with Freddie Mac, irrespective of whether they intend to sell Park Place's paper to Freddie Mac. That's correct. And where does that rule come from? Is that a regulation? That is the testimony of Joan Forenzi at excerpt of the record 179. Is there a reg? 179. Well, that's a page. You have a regulation. That's just testimony. No, I do not have a regulation. That is the effect of the rule. Well, what rule? That's what we're asking. That's what we're trying to find. What's the rule? The rule is that anyone on this exclusionary list cannot do business. Freddie Mac, any bank, anyone on the exclusionary list cannot do business with anyone, any of Freddie Mac's services. Yeah, where's the rule? Where do we find the rule? The rule is enunciated in the testimony of these witnesses. No, they didn't enunciate a rule. They enunciated a practice. In other words, you're telling us that once Park Place went on the exclusionary list, that Freddie Mac will go to National City and say, say, are you folks still buying stuff from Park Place? And if National City says, yes, but we're using our own money to do it and we're not selling any of this stuff to you, that Freddie Mac would still say, we're done. We're not dealing with you at all because you're touching Park Place, even though you're not selling any of this stuff to us. That's what I'm telling you. Okay, now where is that established in Freddie Mac's rules? I cannot answer that other than through the testimony. It's pretty draconian, and quite frankly, I think it's pretty hard to believe. And if there isn't anything to establish it, but sort of loose language in a deposition, I have to say I'm a little skeptical. Aren't Freddie Mac's rules published, printed on paper rules? I assume they are, yes, Your Honor. And you must have read them because it's your case? I have read them. And could you find a rule in there that said what these witnesses said? I have not. I have only the testimony of these witnesses. I looked through them. You couldn't find a rule that said that? No, I could not. See, I would think that a bank that actually wanted to lend money might say, oh, yeah, family home, we know you, we can't resell your papers. So I'll tell you what, we'll buy your 8% paper so that it gives us a yield of 16%, and we'll carry the loan ourselves. But the effect of the rule is that they don't do that. No, I know they don't do that because they don't like to lend money. They like to get fees for processing paper. But I'm looking for the rule that says they can't do that. I am aware of no such rule. I'm only aware of the practice. There's a huge difference between the two things that you've described to us, counsel. Now, did Park Place have any right to appeal its listing on the exclusion? It did. It went through an appellate process with Freddie Mac, and the appeal was denied. Okay. Did it have any right to take a further appeal of that from Freddie Mac? It did not. It had no right to appeal that to court? It had no rights under the APA? It did not. It did not, or it does not have a right to? It does not have a right. Okay. So you're speaking then as a matter of law, not that it did not. I'm saying that as a matter of law. I guess we're all out of questions. If you want to hold your time for rebuttal. I will hold my time for rebuttal. Thank you. Thank you, counsel. Oh, is there another argument on the same side? No, Your Honor. I'm going to reserve to rebut. Okay. Counsel. Good afternoon, Your Honors. Grace Rodriguez for the appellees. May it please the Court. In response to the questions that have been asked with regard to the effect of the exclusionary list, the record is crystal clear, and I'll provide you with numerous sites that were in our brief, that the exclusionary list, it goes only to Freddie Mac seller-servicers. They are told to kept it confidential, and it explicitly says on the list, as well as in Freddie Mac seller-servicer guide, that the seller-servicer is not permitted to sell Freddie Mac any loan that someone on the exclusionary list was involved with or played a role in. So it only prohibits National City from selling to Freddie Mac anything that Park Place issued them? National City and any other seller-servicer. Okay. I just want to focus on this chain between. So if National City wished to buy Park Place paper and not resell it to Freddie Mac. It was free to do that. And it would not bar National City from reselling other paper to Freddie Mac? Correct. So Family Home could, if they could find a bank that would do it, it could be National City Bank, make a deal with them, sell their paper at a price where National City found it worth its while to keep the paper and carry it instead of selling it to Freddie Mac? Absolutely. And this is not a hypothetical question because the record in this case shows that the appellants continued to sell their loans to other Freddie Mac seller-servicers. That's in the record. Also what's in the record is they quoted you, they misquoted you, the deposition testimony of Joan Forenzi. You say that's in the record. They continued to sell to other Freddie Mac servicers. Could you just give us the excerpt to say? I'll do that, Your Honor. Let me give you a couple of other sites as far as what the e-list stands for. It's tied to 987, 797, 2480, and 150, and also 1598. As to Ms. Forenzi testifying appropriately as to the limitations of the list, I'd point you to 150 and 179. Now, could you read us what you have to support what you just said, that Family Home continued to sell to other Freddie Mac servicers? Yes, Your Honor. I'm looking for it in our brief. It's in our brief. We do cite that to that evidence specifically. I was hoping for a little bit of help in the oral argument, but let me go to another one. Yes, Your Honor. No, and I will find it. Since you're Freddie Mac's lawyer, you must really know this stuff a lot better than I do. How about reading the language in the Freddie Mac list and in the Freddie Mac guidebook that says what happens if somebody's on the list, and give us the page numbers. The excerpts are really big in this case, so as a practical matter, I couldn't use them. Understood. The brief has to pinpoint sites, and I'll find them here. All right. The first document I would direct you to is the press release that announced the e-list, and that's at 1740, 1741, and 1742. Usually press releases are not the operative documents. I want to hear the operative documents. And I want to hear the words. See, I couldn't find anything in the excerpts because there's too much of them. Okay. And I couldn't find indented quotes that gave me the words. And I don't care about the argument. I want to hear the words. Okay. The language on the e-list, which is at 1000. The Freddie Mac exclusionary list is distributed monthly. It contains the names and addresses of individuals and companies that have been excluded from participating in transactions involving Freddie Mac loans, either directly or indirectly. Freddie Mac seller-servicers and its contractors must warrant that no person or entity on the exclusionary list is involved in the origination or servicing of a loan sold to or serviced by Freddie Mac. That is the language on the list. So the warranty that National City has to give you is just that nothing in the package is originated by family home. That is correct. Not that they don't buy from family home. That is correct. Okay. We've got some other language, too. Yes, Your Honor, I would direct you to the exclusionary list letter attachment, which is at 581 and 582 in the record. And it basically shows the same thing. The exclusionary list applies to organizations as well as individuals who are owners or officers of or have management or supervisory responsibilities within such organizations. The policy list applies to others who have a critical influence on material aspects of the mortgage. I'm sorry, and it goes on from there. Read the part you put your yellow highlighter on. Excuse me? Just read the part that you use the yellow highlighter on. A seller, servicer warrants in those instances that no excluded person or organization has participated in a mortgage purchase or servicing transaction. Breach of this warranty will lead to actions, including repurchase of the mortgages involved in the affected transactions. That's at 582. It's similar language, Your Honor, in all of the sites that I gave you that refer to the exclusionary list itself. What happens to be the remedy for the breach of the warranty is they have to buy back the paper. That's exactly right. And then there was another question that Your Honors asked the appellants that I wanted to clarify the record on. The evidence is the national city terminated the appellants no later than March of 2006. I'm sorry, March of 2005. And the Freddie Mac put the appellants on the exclusionary list in January of 2006. So nine months later. Oh, so you're saying being put on the exclusionary list could not possibly have caused the national city to fire family homes because they fired family homes before they were on the exclusionary list. Correct. National city made its own unilateral determination to terminate its agreements with the appellants. Appellants weren't on the exclusionary list until when? January of 2006. And what's the site for that? This time I actually do have it right in front of me, Your Honor, because it's one of the documents that I read to you which was the actual list. It's interesting that if the proposed cause did not happen until after the effect. So it's nice to know the site. That's correct. The letter notifying, I read to you from the e-list itself that included the appellants. You have that site. The letter notifying the appellants that they're on the exclusionary list is at 2498. Your Honor, I wanted to kind of go back to kind of the key issues here in the case, which we think established that there's no genuine issue of material fact. First, the mortgage product that was offered by the appellants resulted in more than $3 million of damages to Freddie Mac and to its investors. That's a historical, empirical fact. It's a historical, empirical fact that the loans. That's just another way of saying that these were not of investment grade. Exactly, Your Honor. Is investment grade paper a kind of a commodity that is semi-regulated or is it just out there in the market and the market will do what it does with the commodity? Freddie Mac's charter provides that it will only purchase investment grade loans. And Freddie Mac, there are limits on the types of loans that Freddie Mac can purchase with the underlying goal being that they are kind of the safest investment type vehicle. They have to be conforming loans. There are other participants in the secondary market who purchase other types of loans. So the source for the investment grade obligation is in Freddie Mac's charter. And exclusionary list is one of the tools that Freddie Mac uses to ensure that it is only offering investment grade paper. So we have the first fact, which is that the product caused harm in the secondary market. The second is that during the exclusionary list process, and I believe a question was asked about this earlier as well, the appellants were notified that Freddie Mac was thinking of putting them on the list and were offered an opportunity to submit an appeal. In submitting that appeal, what the appellant said was that they had no obligation to offer investment grade securities and that they were not going to change their practice. Does that warning vitiate the argument that the effect happened before the cause? Did they get some kind of warning that you're likely to be on the list and then National City fires them and then the listing procedure begins? No, let's kind of step back on the underlying chronology a little bit. National City terminates the appellants in March of 2005. Freddie Mac begins its investigation of the appellants to determine whether or not they should be put on the exclusionary list at about that time, and that investigation goes forward. And in connection with that investigation, Freddie Mac talks to some of the borrowers, talks to some National City personnel, reviews loan documentation, comes to a preliminary conclusion that the appellants should be put on the exclusionary list National City did fire them about the same time that Freddie Mac started its investigation. Yes, that Freddie Mac started the investigation. It sounds like Freddie Mac called them and said, hey, we'd like to see some paper about your family home paper, and then National City fires family home.  Because what the record reflects is that Wall Street notified Freddie Mac that it looked like there were three pools that Freddie Mac had offered of National City loans that were prepaying at a rate faster than comparable securities. Freddie Mac notified National City of this inquiry. National City, only National City, and it was clear that the pools in question, the loans, were originated by a third-party broker. National City and the identity of that broker was known only to National City. That's not a piece of data that Freddie Mac gets in purchasing the loan. National City then investigates the broker, meets with the broker, does its investigation, decides to terminate the broker, tells Freddie Mac the name of the broker. Freddie Mac begins its investigation, because now what Freddie Mac needs to find out is what is the scope and size of this problem. Are we buying these loans from other banks? Are they in other pools? So they need to find out what's the size and scope of the problem, and they do their investigation. They come to a preliminary conclusion that the appellant should be put on the exclusionary list, and they notify the appellants in June of 2005 that they are considering putting them on the list. There are extensions. There's an appeal process. The appeal is submitted in September of 2005, and the decision is made by Freddie Mac in January of 2006. Does that address the court's questions as far as the underlying chronology? Not fully. I was thinking, suppose that I'm employed by National City. As soon as I find out that Freddie Mac may have some kind of problem with family home, I don't need to appeal anything. I don't need to bring this along. I can just get rid of family home, and that way whatever happens between them and Freddie Mac is not my problem. The thing I'm really interested in is when does National City know that Freddie Mac is looking into this? I would say that National City knows that Freddie Mac is looking into this, about looking into this meaning the source of the prepayment of these loans in the pool.  Correct. I would say that that's December of 2004, right before the holidays, and that the National City investigation begins in January of 2005. Now, the record is very clear that National City also suffered damages as a result of the appellant's practices. Incidentally, when they got their notification in December 2004 that Freddie Mac was concerned about some of the paper they were selling, were they told then that the paper Freddie Mac was concerned about was the family home paper? No, because this is a very important point. Freddie Mac did not know who the broker was in these pools and really didn't have any loan information at that time. What the record reflects is that Freddie Mac got the loan level information in January. National City started figuring it out in January after the holidays. Correct, because only National City had access to the name of the broker. That's not information that Freddie Mac has access to. So, basically, investigation starts just before the holidays. National City starts looking into it after the holidays, finds out it's probably family home's paper that Freddie Mac is concerned about, fires Freddie Mac, but Freddie Mac doesn't really go through all the formalities of listing them until later. Well, because Freddie Mac doesn't have the information on who the broker is so that it can do its own investigation until after National City terminates. I'm just trying to get the chronology, not justification. That's right. So, right, National City gets the name of the broker, investigates the broker, terminates the broker. Freddie Mac then starts investigating based upon, starting with the information provided by National City. Any other questions on the underlying chronology? The other significant points we had, the first was the nature of the product and that it caused damages. The second is that the appellants refused to change their product. They were told by Freddie Mac what Freddie Mac's issues were with the product, and they responded by saying that Freddie Mac, that they were not going to change their program and that they had no obligation to generate investment-grade paper. Freddie Mac then terminates them. Freddie Mac then makes the decision after this investigation of nearly nine months to put the appellants on the exclusionary list. But that's really all this case is about, putting aside all the pieces of paper and the exhibits. Incidentally, is there a privilege for each of these business sorts in the applicable law? I believe that there is certainly a privilege for the defamation claim. I know common law a lot better than California's statutory codification of it. And then I believe that if the court finds, as a matter of law, that this is not a defamatory statement because it was not made with malice, that that would preclude the court then from, that then the court has to dismiss the statutory unfair competition claim because that's seeking injunctive relief and you can't enjoin a statement of communication that's protected by the First Amendment. I believe that the tortious interference with contract claim, there is no privilege that applies there. But that one, the evidence on that has to be considered straight up. And I believe that the record is very clear that National City made its own unilateral decision to terminate the appellants. There is nothing in the record that suggests that Freddie Mac took an action with the intent of causing Nat City to terminate the agreement or that anything that Freddie Mac did caused National City to terminate the contract. National City had its own reasons for terminating the broker. And National City had its own meetings with the broker. And that's clear in the record. That's all the testimony from National City. Wow. So under, let's see, it's California law? Yes. Under California law, if I'm say a house building contractor, I can't tell my painting sub that they got to quit using some guy who's under indictment for a sex crime or else I'm not going to use him as a painting sub? That I'm not going to, yes. That would be interference with advantageous contractual relations and I would be liable under California law? That's the logical extension of their argument, Your Honor. Is it right? Is that California law? No, that's not California law. I think that the record's clear. Freddie Mac can choose to do business with whoever it does business with. National City can make its own decisions as far as who it does business with. As we came back earlier on the exclusionary list, the opponents were not on the exclusionary list. There had been no determination of that. I wouldn't be privileged under California law to protect my own relationship with the homeowners by refusing to do business with the painting sub that has the sex criminal working for them. You would not have had some improper, immoral intent in doing that. You would have acted with a reasonable business purpose, not with any type of tortious intent. Oh, that's analogous to the common law privilege. Right, so you have a set of facts and a set of factors here that all do coalesce, but technically the privilege belongs on the defamatory, the defamation claim, the statutory unfair competition claim, and I believe the intentional interference claim falls under its own weight because it is not supported by any evidence. But even if it was, you're saying no legitimate business purpose is one of the elements under California law. I don't believe it's one of the elements under intentional interference with a contract. You have to prove that there was a contract, that Freddie Mac knew about it. Now, I don't want to argue against myself. I wish the law was as you would intend, but I believe that all of these factors come in as far as explaining the underlying conduct at issue and the motivations at issue and why nothing that happened was improper. All right, so you have to know about the contract, have an intent to terminate that contract, take actions designed to make that third party terminate the contract, and your actions must have been the proximate cause for why that contract was terminated. And I don't believe that there is any evidence in the record, any direct evidence that supports that. The plaintiffs have a circumstantial case, and that's it. Thank you, counsel. May it please the Court, I'm Mike Collins on behalf of the appellants, Your Honors. First of all, the chronology I think is critical. In the fall of 2004, Wall Street goes to Freddie Mac with an issue. The issue is prepaying of loans. What this Court needs to understand is that the relationship between Park Place, National City, and Freddie Mac had been preexistent since 1995. These same products, these same loans were being sold to Freddie Mac, National City, since that time. Everyone profited from them. There were no complaints about these loans. Freddie Mac is called on the carpet by Wall Street, and its strategic partner, National City and Freddie Mac, have to get together and come up with an explanation for a Wall Street investor. The explanation is, why are these particular pools paying faster than the other pools? Now, this explanation was a known factor by Freddie Mac and National City, because National City was a lender that was known to prepay faster than the other lenders. The concept of what the remedy here is fashioned by Freddie Mac and National City starting in December of 2004. Freddie Mac, the record is full of e-mails from Freddie Mac to National City focusing on the broker, what to do with the broker, how to remedy this situation so that Freddie Mac and its strategic partner, National City, is not labeled with this idea that they have been doing something wrong. And if there was something wrong done, it was by Freddie Mac and National City. I don't get the impression that anybody thought that there was something wrong, other than the fact that Wall Street didn't like the product they were producing. That's a matter of markets and supply and demand. That's not an allegation that there was something illegal or unethical going on here. Absolutely, and that's why this list, which everyone has been calling an exclusionary list, is very important. It's a fraud list. The evidence is clear and unrefuted that if you get on that list... Well, I think the evidence is clear. Don't over-argue your case. I think the evidence was clear that if you engaged in fraud, you could go on that list. But I don't think that fraud was a precondition of getting on that list. Well, in the marketplace where my client was dealing, that list was known as the fraud list. Sounds like your client had a lot of good reason for not wanting to issue this kind of paper, but your client declined to do that. Well, no, Your Honor. There is no reason not to issue this. There's nothing wrong with this paper. National City has been... Counsel, your clients can spit on the piece of paper and try and sell it if they wish to. Exactly. But they can't blame the market if they don't want to buy it. And Freddie Mac explained to your client what the problem was when they had the hearings about the exclusionary list. And your client told Freddie Mac that they had no obligation to issue investment-backed paper. That's fine. That's their privilege. And my client doesn't have any responsibility to adhere to any regulation by Freddie Mac. There is no contractual... Well, nobody says he does. The issue is whether... If this wasn't investment-grade paper, suppose it was dog food. Right. And I find out I'm buying dog food from Hormel, and I find out suddenly dogs won't eat it. Right. Now, I stop buying it, and I put it on a list. I don't buy Hormel's dog food anymore. Exactly. But you don't take the person who's selling Hormel's salt and put that entity on the list. Why can't you? I'm thinking there's this fellow, Eunice, Eunice Kahn, I think, or Kahn Eunice, who just won the Nobel Prize. He loans tiny amounts of money to tiny entrepreneurs so that a woman who's been selling single cigarettes can sell packs of cigarettes, that kind of thing. Whatever paper he gets from them, it's not investment-grade. It's not secured, and means of repayment are pretty dicey. I would imagine that his paper is not investment-grade and could not be on the paper that Freddie Mac would buy. But he's not a crook. He's a Nobel Prize winner for doing this wonderful thing for these poor women. Your Honor, this... It seems like there'd be no problem if Freddie Mac said, Don't buy Eunice Kahn's paper. He's on the exclusion list. It's not my client's paper. My client does nothing other than bring an application to a lender. It's the lender's paper. The lender puts that application through its underwriting process, it approves the loan, and that application has to be pursuant to the rate sheet of the lender. My client is submitting an application. If the remedy here is to tell the lender, Lender, extend your seasoning period from 120 days to whatever Freddie Mac wanted applicable. Freddie Mac didn't do that. They didn't do that because they had been making money since 1995 on this very same product. It's not a situation where my client is writing a loan, sending an application to Lender A, and then sending another application to B. This is repetitive with the same people, with the same entities. National City, Freddie Mac. So why do they have to buy your client's paper? Well, they don't have to buy it, Your Honor, but can they arbitrarily place my client on a list that says, These guys... It's arbitrary. The paper is getting prepaid faster than other papers, so it's not counted as investment grade by the market. That's National City's issue, Your Honor. That's not my client's issue. The seasoning product, the seasoning period is given. Seasoning period. You mean the deal for when we're going to refinance your loan at a lower rate? Exactly. That period is established by the lender. My client can do nothing that the lender doesn't allow. This whole process is a product of what the lender wants, what the lender doesn't want. National City was requiring Family Home to refinance the loans at a lower interest rate. National City was encouraging my client to redo these loans every 120 days. The record is clear, Your Honor. This was National City's program. National City was the entity who started it, and Freddie Mac profited by it for many years. The other issue, Your Honor, there is no conditional privilege for any cause of action before this Court other than defamation. And with the defamation, if we show malice, then the conditional privilege dissolves. Now, the issue of malice is this. Does my client warrant being placed on a fraud list for something that is the product of the lender? And Freddie Mac and National City both know that. The fraud list is exactly that. It's not just an exclusionary list. If you're in the mortgage industry and you go on that list, you are looked at as having committed fraud. It is investigated by the fraud unit. You get placed on it by the fraud unit. If there is an appeal, it is to the fraudulent investigation unit that the appeal goes to. Is it correct that you can get on it for reasons other than fraud and that it's not called a fraud list formally? It's called an exclusionary list? Well, Your Honor, we have no evidence that anyone has ever been placed on the fraud list except for fraud. We sought that evidence and were not allowed to get it. They say that you can get on the list for something other than a criminal act. But the evidence in this case, through our experts, through the unit that is most intimate with investigating it, the fraud investigation unit suggests that to get on this list, you are a fraud. And for Freddie Mac to be able to arbitrarily take an entity that it has no business contact with and take that entity and put it on a list for the whole industry to see that they are a fraud and have that listing put my client out of business, which it did. That was Freddie Mac's intent. Your Honor, my opponent here suggests that Freddie Mac did not do anything on this case until after National City terminated the relationship. That's absolutely wrong. On January 28, 2005, Freddie Mac already had a zip file specifically on my client. If the Court is interested, that is at Excerpt 3421, where Freddie Mac has its own zip file. Freddie Mac has been searching for the name, for the entity, and the name is not important. It's the position. Freddie Mac tells National City, get the broker. The broker has gotten it. This is not the first time that Freddie Mac and National City has dealt with these issues. Look at the e-mails from December of 2004, from the Freddie Mac people to the National City people. Counsel, you will want to wrap it up because you're a minute and a half over. Well, in summary then, Your Honor, this issue, and I sense the sensitivity that this Court has with the issue, this issue is about National City's product being, the fault for National City's product being placed upon my client. My client was following the rate schedule of National City and did business with Freddie Mac and National City for many years. Everyone made money until Wall Street barked and then Freddie Mac and National City needed a scapegoat and my client was in. Thank you. Thank you, Counsel. Family home versus federal home loan is submitted and we are adjourned until 9 tomorrow.
judges: Goodwin, Kleinfeld, Bybee